IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DON LLOYD COOK**                                                                                               **Plaintiff**

v.                                       No. 4:22-cv-00548-KGB

**RYAN WINGO**, individually;
**JEFF SHEELER**, individually;
**JOHN S. JOE**, individually; and
**WILLIAM J. BRYANT**, individually                                                        **Defendants**[1]

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT, THOMAS J. TIDERINGTON

Plaintiff's response to Defendants' *Daubert* motion fails to understand one of their primary points: Thomas Tiderington applies police standards that have nothing to do with the standards of the Arkansas State Police (ASP). Therefore, those standards, and by extension the conclusions based on those standards, have no bearing on this case. Tiderington's opinions still consist of legal conclusions that are not his to make, despite Plaintiff's statements to the contrary. Also, Plaintiff's failure to respond to Defendants' assertions that Tiderington's testimony consists of credibility determinations that are not his to give is glaring and demonstrates that there is no good defense to Defendants' argument on that point. This Court should exclude Tiderington as a witness.

### Argument

The assertions made by the Defendants in their original motion are still true and stand largely unopposed by the Plaintiff, who instead relies on Tiderington's police standards as the

---

[1] Originally, Cook sued five unnamed ASP troopers. *See* Compl. ¶ 8, Doc. 1. Cook recently moved to dismiss those troopers, so the Defendants will proceed under the assumption that the Court will grant that motion. *See* Mot. Dismiss, Doc. 14; Br. Supp. Mot. Dismiss, Doc. 15.

basis for his testimony. Those standards have nothing to do with ASP's own policies. Plaintiff also states that Defendant did not attempt to depose Tidderington. He fails to mention that Tiderington was not disclosed as a witness until three days prior to the discovery deadline, thus making a deposition impractical. Whether Defendants did or did not depose Tiderington should have no impact on whether his testimony is allowed.

> **1. Tiderington's opinions on police practices are based on standards that have no bearing on this case.**

Plaintiff's reply repeatedly says that Tiderington relies on model rules and standards promulgated by international law-enforcement organizations. However, he does not dispute that none of these organizations set the ASP's standards. In fact, Tiderington makes no reference in his expert report to having viewed ASP standards and policies. Plaintiff attempts to cite to the deposition of Lt. Bobby Brown (which Tiderington did not view when writing his report) to support his argument that these model policies are relevant. Dkt. 29, at 4. However, Lt. Brown never said that IACP model policies played a role in ASP's own policies. Brown said that "there are some model policies that – I'm sure that other agencies use." *See* Pl. Ex. 2, at 29:24-25. Later, when Plaintiff's counsel questioned Lt. Brown about the IACP's model policies, Brown began to say he'd "never" seen the model policies, but then Plaintiff's counsel cut him off and proceeded in another line of questioning. *Id.* at 32:9. Lt. Brown also never said that the ASP derived it policies from the International Association of Police Chiefs (IACP) as Plaintiff says he does. Instead, he was responding to a hypothetical question about where some police departments get their standards and said a recognized agency may be one of them. Id. 31:7-13. Similarly, Plaintiff's counsel attempts to construe Captain Sheeler's deposition testimony (which Tiderington, again, did not view when writing his report) as stating he knows ASP policies are set by the IACP. That is not remotely what Sheeler actually said in his deposition. When asked if he agreed IACP was an authoritative law

enforcement agency in the US, Sheeler said "he knows policies are set by their recommendations." *See* Pl. Ex. 3, at 39:8-18. Construing this response to mean that ASP policies are set by the IACP is a massive stretch at best and downright dishonest at worst.

Similarly, Plaintiff attempts to state that Tiderington's conclusions about the report writing and investigation are properly based on nebulous model police standards. However, the two non-binding cases he cites (which come from a completely different circuit) contain a very important distinction: they also involved the actual guidelines and policies of the police department in question. Tiderington's report contains no mention of the ASP's actual policies and procedures. Tiderington opines that the way the reports were done deviates from standard police procedure, but he never read ASP's procedures for report writing when making his evaluations. He has never read their policies and procedures, and he never viewed any of the Defendants' deposition testimony. His testimony is both irrelevant and not based on all of the pertinent facts, and therefore should be excluded.

**2. Tiderington's opinions are full of legal conclusions that are not for him to make.**

Plaintiff states that "Mr. Tiderington's primary opinion is that the force used by Defendant Wingo served no legitimate law enforcement purpose and fell below law enforcement standards regarding the use of force." Dkt.29 at 3-4. That is not in fact Tiderington's primary opinion. Plaintiff attempts to couch his expert's legal conclusions in law enforcement standards and practice. In fact, Tiderington list his "Opinion 1" as "the force used by Officer Wingo was excessive, needless and objectively unreasonable." Def.'s Mot. Exclude, Ex. 1, at 17. His second sentence says that such force "violated the Fourth Amendment to the United States Constitution." *Id.* In his "Opinion 2" Tiderington opines that Wingo's use of a bean bag munition "cannot be regarded as objectively

reasonable." *Id.* at P.19. These are his true opinions, written in bold in his report, and they are legal conclusions.

Plaintiff tries to say that such opinions are admissible because "an opinion is not inadmissible just because it embraces an ultimate issue." Dkt. 29 at 5. But Plaintiff misunderstands the Defendants' argument. Factual opinions that potentially embrace the ultimate issue can be allowed, but legal opinions are not. At trial, "expert testimony on legal matters is not admissible" because "[m]atters of law are for the trial judge." *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003). Whether Corporal Wingo's actions were "excessive, needless and objectively unreasonable" is a matter of law for the judge to decide. Def.'s Mot. Exclude, Ex. 1, at 17. Whether the Defendants "violated the Fourth Amendment to the United States Constitution" is a matter of law for the judge to decide. *Id.* at 19.

Both Opinions 1 and 2 are legal conclusions as to the reasonableness of Corporal Wingo's actions, which are not admissible. *See Peterson*, 60 F.3d at 475. Accordingly, the report (or at least those portions of it) and related testimony of Tiderington should be excluded by this Court.

### 3. Tiderington still makes inadmissible credibility determinations.

Plaintiff does not even try to address this part of Defendant's argument. However, that does not stop Plaintiff from asserting another credibility determination into their response brief. Plaintiff says that because Captain Sheeler saw Cook's fists clenched, he must be lying about believing that Cook could be armed. That is, of course, not the case because an individual can be armed without having the weapon directly in their hands. In fact, that is often the case. This is yet another example of Plaintiff and their expert, Mr. Tiderington, making inadmissible credibility determinations that are purely for a jury to make, but couching them in the form of expert opinions to give them more weight to the Court. For those reasons, Tiderington's testimony should be excluded.

## Conclusion

Defendants respectfully request that their motion be granted in its entirety, and the Court enters an order prohibiting Plaintiff, from offering testimony or documentary evidence from his expert witness, Thomas Tiderington.

                Respectfully submitted,

                TIM GRIFFIN
                Attorney General

By:    Noah P. Watson
        Ark. Bar No. 2020251
        Senior Assistant Attorney General

        Justin Brascher
        Ark. Bar No. 2023029
        Assistant Attorney General

        Arkansas Attorney General's Office
        323 Center Street, Suite 200
        Little Rock, Arkansas 72201
        (501) 503-4335
        (501) 682-2591 fax
        noah.watson@arkansasag.gov
        justin.brascher@arkansasag.gov
        *Attorneys for Defendants*