## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**DON LLOYD COOK**                                                                  **PLAINTIFF**

**v.**                         **CASE NO. 4:22-cv-00548-KGB**

**RYAN WINGO,** *et al.*                                              **DEFENDANTS**

### DEFENDANTS' LOCAL RULE 26.2 PRETRIAL DISCLOSURE SHEET

COMES NOW, Corporal Ryan Wingo and Captain Jeff Sheeler ("Defendants"), through undersigned counsel, and for their Local Rule 26.2 Pretrial Disclosure Sheet, state as follows:

**(1)**     **The identity of the party submitting information.**

This pretrial disclosure sheet is submitted by Corporal Ryan Wingo and Captain Jeff Sheeler.

**(2)**     **The names, addresses, and telephone numbers of all counsel for the party.**

    Ryan Hale
    Ark. Bar No. 2024310
    Senior Assistant Attorney General
    ryan.hale@arkansasag.gov
    (501) 295-7419

    Laura Purvis
    Ark. Bar No. 2023239
    Assistant Attorney General
    laura.purvis@arkansasag.gov
    (501) 320-3085

    Arkansas Attorney General's Office
    323 Center Street, Suite 200
    Little Rock, AR 72201

**(3)     A brief summary of claims and relief sought.**

On September 30, 2024, the Court entered an order that granted in part and denied in part Defendants' summary-judgment motion. *See* Opinion and Order, ECF No. 40. Following that Order, the following claims remain:

- Cook's claim that Corporal Wingo violated Mr. Cook's rights under the Fourth Amendment the night of the protest, and Corporal Wingo's qualified immunity defense.
- Cook's claim that Corporal Wingo and Captain Sheeler violated Cook's rights with respect to Cook's arrest one year after the protest, and Corporal Wingo and Captain Sheeler's qualified immunity defense.
- Cook's claim that Corporal Wingo and Captain Sheeler violated Mr. Cook's rights under the First Amendment, and Corporal Wingo and Captain Sheeler's qualified immunity defense.

According to the Complaint, ECF No. 1, Plaintiff seeks a declaration that Wingo's actions violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments, as well as compensatory damages, actual damages, and attorney's fees.

**(4)     Prospects for settlement. (Note: The Court expects attorneys to confer and explore the possibility of settlement prior to answering these inquiries.)**

Defendants' counsel and Plaintiff's counsel have had informal discussions about the prospects for settlement. Currently, the prospects for settlement are low.

**(5)     The basis for jurisdiction and objections to jurisdiction.**

Plaintiff brought this suit under 42 U.S.C. § 1983 and asserts federal question and supplemental jurisdiction under 28 U.S.C. §§ 1331 and 1367. *See* Compl. ¶ 1, ECF No. 1. Apart from Defendants' previous objections based on qualified immunity, Defendants have no objections to jurisdiction.

**(6)     A list of pending motions.**

None.

**(7)** **A concise summary of the facts.**

Throughout the United States, rioters had injured and killed law-enforcement officers and civilians. In Little Rock, rioters were attacking officers with commercial-grade fireworks and other dangerous objects, shooting guns downtown, and destroying and setting fire to property. In these circumstances, Don Lloyd Cook knowingly decided to stay out well past a lawfully imposed curfew. Then, he suddenly appeared in front of the line of officers who were clearing the Capitol grounds. When he was about 10 feet away from the line, he faced the officers, and with a red face and clinched fists, started yelling angrily. Two officers observed Cook's interaction with the line and independently determined that use of force was necessary to protect the safety of the officers. One used a beanbag round. The other used a foam impact round. Both were the least lethal options available to the officer. Cook filed this lawsuit about only one of those uses of force, and a host of claims related to it.

A. National and Local Tensions

The days and weeks following George Floyd's death were an undeniably and understandably tense time. *See generally* Derrick Bryson Taylor, George Floyd Protests: A Timeline, New York Times (Nov. 5, 2021) [hereinafter, "Protests Timeline"], https://www.nytimes.com/article/george-floyd-protests-timeline.html; *see also* Compl. ¶ 15–17, ECF No. 1. Nevertheless, many of the protests that began peacefully devolved into rioting after nightfall. *See Protests Timeline*; *see also In Little Rock, rally near Capitol turns violent*, Ark. Dem.-Gazette (May 31, 2020) [hereinafter, "Little Rock Rally Turns Violent"], https://www.arkansasonline.com/news/2020/may/31/in-lr-rally-near-capitol-turns-violent-/. These "nights of unrest" involved "shootings, looting and vandalism." *Protests Timeline*. Throughout the nation, "officers were shot and wounded" and "injured after being struck by cars."

*Id*. Civilians were killed too. *Id*. Minneapolis's own mayor accused the rioters of "domestic terrorism." *Id*.

The situation in Little Rock echoed that in other cities because "Arkansas . . . was not immune to the anger, frustrations and fear of police violence voiced by protests of Mr. Floyd's death." Compl. ¶ 17, ECF No. 1. On May 31, 2020, the Little Rock "[p]rotests took a violent turn," with riotous protestors hitting "at least one police officer . . . with rocks," "shooting fireworks at" officers, and smashing car and building windows near the Capitol. *Little Rock Rally Turns Violent*. Throughout the Little Rock protests, riotous protestors also threw at officers large artillery-shell fireworks, compression bombs, frozen water bottles, bricks, sticks, liquid-filled balloons, and slingshot ball bearings. The Arkansas National Guard even had to be called up.

Because of these events, on June 1, 2020, Little Rock Mayor Frank Scott instituted a 10 p.m. curfew. The Capitol building was the epicenter of the protests in Little Rock, so to enforce the curfew, the ASP, in coordination with the National Guard, mustered at Woodlane Street and 7th Street in Little Rock, which is at the southeast of the Capitol grounds. They then formed a line across Woodland and onto the Capitol grounds.

By that time, things had already turned into a "civil disturbance," with people "not listening to lawful commands" and "throwing objects at the police." Around 10:30 p.m., law enforcement announced to protestors that the 10 p.m. curfew was in effect and informed them that it was time to disperse. Many protesters did not leave after multiple dispersal orders, so law enforcement advanced north up Woodlane Street and used CS gas to disperse protesters who were unlawfully gathered past curfew.

Like other nights, the protesting continued to devolve after curfew. Civilians fired "a series of gunshots on at least two occasions." Some threw artillery-shell fireworks, compression bombs,

frozen water bottles, bricks, sticks, liquid-filled balloons, and slingshot ball bearings at the officers. Some engaged in "[c]riminal conduct, criminal acts, destruction of property, [and setting] fires." In other words, "[i]t was a riot." This was the situation reasonable officers found themselves in on the night of June 1, the night after the most violent night of the protests.

B. The Defendants

There are two Defendants remaining in this case. First, Captain Jeff Sheeler. Captain Sheeler is the ASP's Troop A Commander. During the May and June 2020 protests, he was a lieutenant and was in Little Rock to address safety concerns related to the protests. Specifically, he was the supervisor for and member of the ASP Special Weapons and Tactics unit (SWAT). On June 1, his responsibility was to provide cover for the law-enforcement line, using either lethal force or nonlethal force, as necessary. Captain Sheeler observed Cook's interaction with the law-enforcement line and independently determined that action was necessary. Thus, he employed a foam impact round, fired from a 40 mm single launcher.

Second, Corporal Ryan Wingo. Corporal Wingo is a corporal in ASP's Troop K. During the May and June 2020 protests, he was a trooper first class and was in Little Rock to address safety concerns related to the protests. Specifically, he was a member of the ASP's ERT, and on June 1, 2020, was acting as a grenadier with the responsibility of providing less-lethal coverage for the line. Corporal Wingo observed Cook's interaction with the law-enforcement line and independently determined that action was necessary to stop a potentially dangerous alteration between Cook and the line. Thus, he fired the least lethal weapon at his disposal—a beanbag round from a 12-gauge shotgun.

C. Cook's Night Out

In the nights before June 1, 2020, Cook had not attended any of the protests in Little Rock that had occurred after George Floyd's death. Something was different about that night.

For supper on June 1, Cook met a friend at U.S. Pizza Company. Cook patronized U.S. Pizza at least once a week. And, although he "do[esn't] have an exact memory" of how much alcohol he drank on June 1, he "would drink to intoxication" on other visits. At some point during dinner, Cook decided to go to the Capitol to join the protests, though his friend declined to join him.

Between 8:00 and 8:30 p.m., Cook parked "[a] couple of blocks" east of the Capitol building. When he walked up, he saw protestors on the street, sidewalks, and grass in front of the Capitol. He did nothing other than "walk[]" around "in front of the Capitol in the street . . . and the stairs." He was "look[ing] to see if [he] knew anybody."

Cook knew there was a 10 p.m. curfew. And he eventually heard the officers' commands to leave. But it was only when Cook saw the law-enforcement line moving up Woodlane that he decided it was time to go. Although his car was parked to the east, Cook began walking north. He started out "[w]alking along one of the sidewalks." As Cook walked, he was "going through tear gas." He would "[p]eriodically" "turn around and look" "[a]nd then keep walking." Eventually, he turned and meandered onto the grass.

D. The Incident

Well after curfew, around 10:40 p.m., the officers first saw Cook. He emerged from landscaping and a cloud of tear gas. The line nearest Cook was spread thin, with little support. And the officers saw that Cook was red faced, had clinched fists, and was yelling at the officers. They thus inferred that Cook was angry or highly agitated.

6

The distance between the line and Cook closed. When Cook was about 10 feet away, he turned to face the sparse officer line, though (according to him) he did not "advance" on them. The officers did not know whether Cook had a concealed gun or other weapon. But he could have had one, like other unknown individuals that night.

There was a reasonable concern about an imminent safety threat to the officers on the line. Captain Sheeler fired a nonlethal foam impact round at Cook to gain compliance. Corporal Wingo aimed his least-lethal weapon—a beanbag-round fired from a 12-gauge shotgun—at Cook's center mass, in compliance with all his training, and fired three beanbag rounds. The first two shots missed due to environmental factors. When Cook went down, Captain Sheeler and Corporal Wingo immediately stopped using force, and then officers broke the line, went to Cook, arrested him, and brought him to a staging area behind the line for medical treatment.

**(8)     All proposed stipulations.**

None.

**(9)     The issues of fact expected to be contested.**

The issues of fact expected to be contested at trial include, but are not limited to, the following:

- Whether Cook was intoxicated on the night of June 1, 2020.
- Whether Cook refused to follow any officer's commands.
- Whether Cook advanced in the direction of any police officers.
- Whether Cook saw any protestors advance toward the police line.
- Whether Cook saw any protestors hit with pepper balls or foam impact rounds.
- Whether riotous protestors threw dangerous objects at the officers, including artillery-shell fireworks, frozen water bottles, rocks, sticks, slingshot ball bearings, and liquid-filled balloons.

**(10)    The issues of law expected to be contested.**

The issues of law expected to be contested at trial include, but are not limited to, the following:

7

- Whether Defendants are entitled to qualified immunity.
- Whether there was probable cause to support Cook's arrest.
- Whether Corporal Wingo violated Mr. Cook's rights under the Fourth Amendment the night of the protest.
- Whether Corporal Wingo and Captain Sheeler violated Cook's rights with respect to Cook's arrest one year after the protest.
- Whether Corporal Wingo and Captain Sheeler violated Mr. Cook's rights under the First Amendment.

**(11)** **A list and brief description of exhibits, documents, charts, graphs, models, schematic diagrams, summaries, and similar objects which may be used in opening statement, closing argument, or any other part of the trial, other than solely for impeachment purposes, whether or not they will be offered in evidence. Separately designate those documents and exhibits which the party expects to offer and those which the party may offer.**

Defendants expect to offer the following documents, exhibits, or demonstratives at trial:

- Captain Jeff Sheeler's Incident Report
- Corporal Ryan Wingo's Incident Report
- Arrest Warrant and Probable Cause Affidavit for Don Lloyd Cook
- Arkansas State Police Policy Manual
- Security Footage from June 1, 2020
- YouTube video of Don Lloyd Cook from June 1, 2020, available at https://youtu.be/S_eOKXAuWZo
- Order re: Agreement of the Parties on Cook's Obstruction Charge (Plaintiff's Bates No. 00023)
- Memo from Lt. Brown re: ERT Little Rock/Conway Civil Disturbances (Plaintiff's Bates No. 000131–134)
- Facebook Post Containing Comment from Don Lloyd Cook (Plaintiff's Bates No. 000135)
- Body-Camera and Dash-Camera Footage from June 1–2, 2020

Defendants may offer the following documents, exhibits, or demonstratives at trial:

- Derrick Bryson Taylor, *George Floyd Protests: A Timeline*, New York Times (Nov. 5, 2021), https://www.nytimes.com/article/george-floyd-protests-timeline.html.
- *In Little Rock, rally near Capitol turns violent*, Ark. Dem.-Gazette (May 31, 2020), https://www.arkansasonline.com/news/2020/may/31/in-lr-rally-near-capitolturns-violent-/.
- City of Little Rock June 1, 2020 Press Release
- Layout of the Capitol and its Grounds / Positioning of Officers and Plaintiff
- Chart Depicting Timeline of Events
- Map of Capitol and its Grounds

**(12)** **The names, addresses and telephone numbers of witnesses for the party. Separately identify witnesses whom the party expects to present and those whom the party may call. Designate witnesses whose testimony is expected to be presented via deposition and, if not taken stenographically, a transcript of the pertinent portion of the deposition testimony.**

Defendants expect to call the following individuals as live witnesses:

- Captain Sheeler. Captain Sheeler may be contacted through undersigned counsel for Defendants.
- Corporal Wingo. Corporal Wingo may be contacted through undersigned counsel for Defendants.
- Don Lloyd Cook. Mr. Cook may be contacted through his counsel, Mr. Mike Laux.
- Lieutenant Bobby Brown. Lieutenant Brown may be contacted through undersigned counsel for Defendants.

Defendants may call the following individual as a live witness:

- Fmr. Colonel William J. Bryant. Fmr. Colonel Bryant has retired from the Arkansas State Police but may be contacted through undersigned counsel for Defendants.

**(13)** **The current status of discovery, a precise statement of the remaining discovery and an estimate of the time required to complete discovery.**

Discovery closed on August 28, 2023. *See* Final Scheduling Order, ECF No. 7. There is no remaining discovery.

**(14)** **An estimate of the length of trial and suggestions for expediting disposition of the action.**

Defendants anticipate that trial will take between three and five days. At this time, Defendants do not have any suggestions for expediting disposition of the action.


        Respectfully submitted,

        TIM GRIFFIN
        Attorney General


By:    Ryan Hale
        Ark. Bar No. 2024310
        Senior Assistant Attorney General
        Laura Logan
        Ark. Bar No. 2023239
        Assistant Attorney General

        Arkansas Attorney General's Office
        323 Center Street, Suite 200
        Little Rock, AR 72201
        (501) 295-7419
        (501) 682-2591 fax
        ryan.hale@arkansasag.gov
        laura.purvis@arkansasag.gov

        *Attorneys for Ryan Wingo and Jeff Sheeler*