IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DON LLOYD COOK**                                                                                          **PLAINTIFF**

**v.**                      **CASE NO. 4:22-cv-00548-KGB**

**RYAN WINGO, et al.**                                                                                **DEFENDANTS**

### DEFENDANTS' REPLY TO
### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### DEFENDANTS' MOTION IN LIMINE

Mr. Cook's own response shows that (1) his disclosures of lost wages evidence was untimely and improper, and (2) his past acts evidence is neither admissible under Rule 404(b) or Rule 608.

*Lost Wages Evidence*. Mr. Cook gave an exhaustive calculation of each category of damages in his June 2023 answers to Defendants' written discovery requests. He was asked in Interrogatory #10 to "provide a computation of each category of damages allegedly caused by the defendants, the basis for each computation, and the materials that document the nature and extent of the injuries suffered." Defs.' Mot. in Lim., Ex. 3 "Plaintiff's Original Answers to Defendants' Written Discovery Requests" at 6. To that interrogatory, he identified several medical expenses he incurred with the calculations for each. *Id.* Nowhere in those calculations did any hint of lost wages appear, and nowhere in his answer did he put Defendants on notice of an intent to supplement the categories of damages he provided in his answer.

Defendants Sheeler and Wingo relied on Mr. Cook's exhaustive identification of damages categories and calculation of damages when they proceeded to take his deposition in August 2023. And Mr. Cook's answer was indeed exhaustive as far as categories of damages go. Where he put Defendants on notice that he was still receiving treatment from his psychiatrist, he did not apprise Defendants of any intent to supplement the damages categories he was seeking to recover. *See id.*

(stating "Dr. Smith's treatment of PLAINTIFF is ongoing" but including no other indication of supplementation); *see also id.* at 8 (giving Defendants notice of an intent to supplement elsewhere in his response to Request for Production No. 2).

Mr. Cook points to an answer in his June 2023 response to Defendants' discovery request, which details a list of possible witnesses and the statements with which they may testify consistently. In that answer, he identified Col. Allen Brown, "a former client and friend known (sic) PLAINTIFF for approximately five years." *Id.* at 3. "PLAINTIFF was forced to withdraw from representing Col. Brown in a civil case due to issues relating to his injury." *Id.* But Col. Brown was not mentioned in Mr. Cook's answer regarding damages, and Mr. Cook now attempts to conflate the identification of a particular witness with claiming lost wages damages.

It is not the defendant's responsibility, however, to determine whether a plaintiff is telling the truth or giving incomplete answers when he provides his answers to interrogatories and requests for production. And it was not on Defendants here to determine whether Mr. Cook should have included lost wages calculations in his answer *specifically* regarding damages. No, the burden to state his damages with particularity remained with Mr. Cook. And that is especially true where three years had lapsed since June 1, 2020. In June 2023, Mr. Cook had information regarding his alleged lost wages at his disposal, but he chose not to disclose it when he had the opportunity. Thus, Defendants had no need to ask about lost wages when they took Mr. Cook's deposition in August 2023 because Mr. Cook categorically excluded them from his answers to Defendants' written discovery requests.

Mr. Cook attested to those June 2023 discovery answers stating, "these Answers to Discovery transmitted to defense counsel are true and correct to the best of my knowledge and belief." *Id.* at 10. If Mr. Cook intended to seek lost wages damages then, he should have divulged

2

complete and accurate information when he was specifically asked about it, or he should have put Defendants on notice of an intent to supplement categories and calculations of damages and actually have done so during the discovery period, which closed on August 28, 2023. Mr. Cook may have intended to seek lost wages damages when he filed his complaint in June 2022, but his answer to Defendants' interrogatory on damages represented to Defendants an abandonment of that intent. And regardless of what Mr. Cook subjectively believed about the production of his tax returns, the truth of the matter is that he did not produce them while the discovery period was still ongoing.

Mr. Cook's untimely and improper disclosure of lost wages damages, disclosed in December 2024 over a year after discovery closed, should not be allowed to work to his benefit. Defendants will be severely prejudiced by allowing Mr. Cook to attempt to put into evidence approximately $680,000 in additional alleged damages—far more than what was originally calculated and disclosed during the discovery period. For these reasons, Defendants respectfully request this Court exclude evidence that was improperly disclosed.

*YouTube Video*. The YouTube video Mr. Cook has identified should not be admitted for any purpose but should, instead, be excluded altogether. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." Fed. R. Evid. 404(b). To be clear, "[p]ropensity evidence is out of bounds," and this bar works "to avoid overpersuading the jury as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *United States v. Parker*, 634 F. Supp. 3d 583, 591 (W.D. Ark. 2022) (internal quotations omitted).

"The Eighth Circuit has stated that 'Rule 404(b) precludes propensity evidence,'" "'see[ing] no relevant distinction between it and evidence tending to prove a predisposition or inherent tendency.'" *Walls v. Shelby*, No. 5:11-CV-174-KGB, 2012 WL 6569775, at *1 (E.D. Ark. Dec. 17, 2012) (quoting *United States v. Johnson*, 439 F.3d 884, 887 (8th Cir. 2006)). "The rule excludes evidence of specific bad acts used to circumstantially prove a person has a propensity to commit acts of that sort." *Id.* (quoting same). "Propensity evidence, whether of a person's general character or examples of specific bad acts, is ordinarily excluded because of the likelihood the jury may misuse it." *Id.* (quoting same). And even if evidence is admitted for a permissible purpose, "[i]t is always possible, of course, that a jury might use properly admitted evidence of a defendant's conduct in the way prohibited by Rule 404(b)." *Parker*, 634 F.Supp. at 591 (internal quotations omitted). So "[w]hen the risk of such use is too high, the evidence can be excluded altogether." *Id.* (internal quotations omitted).

One of the claims remaining against Corporal Wingo in this case First Amendment Retaliation. While Mr. Cook asserts that he "does not seek to introduce the [YouTube] video in his case-in-chief, nor to claim that the video is admissible to show Wingo's character," it will have exactly that effect if it is admitted. *See* Pl.'s Resp. to Defs.' Mot. in Lim. at 16. And Mr. Cook agrees that video could be construed as some past act of retaliation:

> The video shows that Wingo performed an abrupt U-turn in front of a motorist who then honked at Wingo in response. *Apparently angered by this protected First Amendment expression*, Wingo changed his U-turn into a 360º turn, got behind the honking motorist and accelerated toward him in quick pursuit.

*Id.* (emphasis added).

Mr. Cook says that "Wingo's prior misconduct reveals a (sic) both a knowledge of how to avoid accountability for his misconduct (blame and arrest the victim) and a method of operation wherein he lies to conceal his misconduct by impugning Arkansas citizens he counters in the field."

4

*Id.* at 19. But 404(b) "excludes evidence of specific bad acts used to circumstantially prove a person has a propensity to commit acts of that sort." *Walls*, 2012 WL 6569775, at *1. Evidence implying Corporal Wingo has a character trait of unaccountability is just sort of propensity evidence 404(b) was created to exclude. And if Mr. Cook wishes to attack Corporal Wingo's credibility by arguing he has a penchant for dishonesty, he must do so through *proper* impeachment, which will be addressed further down.

   Even if Mr. Cook's stated purpose for putting on other acts evidence were permissible, knowledge of how to avoid accountability is not a material point at issue in Mr. Cook's retaliation claim, and the YouTube video is extremely more prejudicial than probative. *See Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008) (establishing parameters for admissibility of prior acts evidence used for a permissible purpose). And there are several factors establishing the extremely prejudicial nature of this video. First, the YouTube video was created by Rebel HQ, which "amplifies some of the most dynamic voices of the progressive movement." Rebel HQ Homepage, https://www.youtube.com/channel/UCuMo0RRtnNDuMB8DV5stEag. And Rebel HQ falls under the banner of The Young Turks—an organization that provides commentary that is "almost always on the left" and that lauds itself for "rebel[ling] against authority or societal expectations." The Young Turks About Page, https://tyt.com/about. And worse than the fact that this video does not come from a neutral perspective, the content of the video itself does not constitute unbiased reporting but has the specific purpose of painting Corporal Wingo in the worst possible light. In fact, the video has not been authenticated, and Defendants would have no opportunity to cross-examine the maker of the video for the commentary offered by the creators within the video.

Further, the commentary in the video does not just discuss the prior traffic stop in which Mr. Cook alleges Corporal Wingo was untruthful. It also opines about the present matter, stating at one point that "Wingo fired at a peaceful Black Lives Matter protester, shattering that man's jaw." Rebel HQ YouTube Video, https://www.youtube.com/watch?v=a1KxnEAcR9c. But that is exactly the contention at issue in this case—Defendants will testify and put on evidence that Mr. Cook was *not* a peaceful protester.

Perhaps the prejudicial nature of the video would be minimized if it were only the dash camera footage being used, but it is not. This video fails both the prejudice balancing tests found in the Rule 404(b) permissible purpose test and Rule 403. *See Batiste*, 526 F.3d at 380 (requiring other acts evidence used for a permissible purpose to simply be "higher in probative value than in prejudicial effect"); *see also* Fed. R. Evid. 403 (allowing courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting, time, or needlessly presenting cumulative evidence."). On top of this, the introduction of this video would necessarily require a sort of trial within a trial, as Defendants will put on testimony to refute Mr. Cook's allegations regarding this past act. Because of this, "[t]he district court also may consider and choose to avoid a trial within a trial for each previous incident, because the parties may seek to establish the similarities or lack of similarities and contest the culpability for each incident." *Chism v. CNH Am. LLC*, 638 F.3d 637, 642 (8th Cir. 2011). For these reasons, this evidence is impermissible propensity evidence, and it should be excluded altogether.

Mr. Cook also asserts that the primary use of this video would be for impeachment purposes if Corporal Wingo does not "admit a (sic) trial to untruthfulness in the course of his police duties, and that his prior untruthfulness was a misrepresentation to cover up his own conduct and blame

6

someone else." Pl.'s Resp. to Defs.' Mot. in Lim. at 16–17. He also asserts he "should be allowed to impeach [Corporal Wingo] with his ASP video." *Id.* at 17. But that is not how impeachment under Rule 608 works. "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). If Mr. Cook thinks there is some basis for impeaching Corporal Wingo under Rule 608, he cannot use the video to do so.

## Conclusion

For these reasons, Mr. Cook should not be allowed to introduce evidence of lost wages, and he should not be permitted to use the YouTube video he has identified for any purpose at trial. Defendants respectfully request this Court grant their Motion in Limine and exclude the evidence at issue. They further request any and all just and proper relief to which they may be entitled.

Respectfully submitted,

TIM GRIFFIN
Attorney General

By: Ryan Hale
Ark. Bar No. 2024310
Senior Assistant Attorney General

Laura Purvis
Ark. Bar No. 2023239
Assistant Attorney General

Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 295-7419
(501) 682-2591 fax
ryan.hale@arkansasag.gov
laura.purvis@arkansasag.gov

*Attorneys for Ryan Wingo and Jeff Sheeler*