## COURT'S INSTRUCTION NO. 1

Members of the jury, the instructions I gave at the beginning of the trial and during the trial are still in effect. Now I am going to give you additional instructions.

You have to follow all of my instructions—the ones I gave you earlier, as well as those I give you now. Do not single out some instructions and ignore others, because they are all important.

You will have copies of the instructions I am about to give you now in the jury room. You will have copies of some of the instructions with you in the jury room; others you will not have copies of. This does not mean some instructions are more important than others. Remember, you have to follow all instructions, no matter when I give them, whether or not you have written copies.



## COURT'S INSTRUCTION NO. 2

I have not intended to suggest what I think your verdicts should be by any of my rulings or comments during the trial.

## COURT'S INSTRUCTION NO. 3

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

You may consider a witness's intelligence; the opportunity the witness had to see or hear the things testified about; a witness's memory, knowledge, education, and experience; any reasons a witness might have for testifying a certain way; how a witness acted while testifying; whether a witness said something different at another time; whether a witness's testimony sounded reasonable; and whether or to what extent a witness's testimony is consistent with other evidence you believe.

In deciding whether to believe a witness, remember that people sometimes hear or see things differently and sometimes forget things. You will have to decide whether a contradiction is an innocent misrecollection, or a lapse of memory, or an intentional falsehood. That may depend on whether it has to do with an important fact or only a small detail.

## COURT'S INSTRUCTION NO. 4

The testimony of a law enforcement officer should be considered by you just as any other evidence in this case, and in evaluating his or her credibility you should use the same guidelines which you apply to the testimony of any witness. You should not give either greater or lesser credence to the testimony of a witness merely because he or she is a law enforcement officer.

## COURT'S INSTRUCTION NO. 5

You have heard testimony from expert witnesses who testified to opinions and the reasons for the opinions. This opinion testimony is allowed because of the education or experience of this witness.

You should judge this opinion testimony just as you would any other testimony. You may accept it or reject it and give it the weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all other evidence in this case.

**COURT'S INSTRUCTION NO. 6**

You must decide whether certain facts have been proved by the greater weight of the evidence. A fact has been proved by the greater weight of the evidence, if you find that it is more likely true than not true. You decide that by considering all of the evidence and deciding what evidence is more believable.

You have probably heard the phrase "proof beyond a reasonable doubt." That is a stricter standard than "more likely true than not true." It applies in criminal cases, but not in this civil case; so put it out of your mind.

## COURT'S INSTRUCTION NO. 7

The plaintiff Don Lloyd Cook brings his claims under the federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

## COURT'S INSTRUCTION NO. 8

In this case, the parties have stipulated that defendant Ryan Wingo and defendant Jeffrey Sheeler acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," also referred to as "under color of law," and you must accept that fact as proved.

## COURT'S INSTRUCTION NO. 9

Plaintiff Don Lloyd Cook claims that defendant Ryan Wingo and defendant Jeff Sheeler each violated his rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment reads:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Every person has the constitutional right to be free from the unreasonable search and/or seizure of his person by law enforcement agents. The question you must answer is whether any defendant violated plaintiff Cook's constitutional rights under the Fourth Amendment, as I shall define them for you in Instruction Nos. 10, 11, and 12.

## COURT'S INSTRUCTION NO. 10

Your verdict must be for plaintiff Don Lloyd Cook and against defendant Ryan Wingo on plaintiff Cook's claim of false arrest on or about the night of June 1, 2020, if all the following elements have been proved to be more likely true than not true:

*First*, defendant Wingo arrested plaintiff Cook; and

*Second*, defendant Wingo did not have probable cause to arrest plaintiff Cook.

If any of the above elements has not been proved, then your verdict must be for defendant Wingo.

Probable cause exists for an arrest if, at the moment the arrest was made, a reasonable person in defendant Wingo's position would have believed that plaintiff Cook was committing a crime. In determining whether there was probable cause for the arrest, you should consider what defendant Wingo knew, and the reasonably trustworthy information defendant Wingo had received.

An arrest is a "seizure" as defined by the Fourth Amendment. More particularly, arrest involves the restriction of movement.

Probable cause requires more than just a suspicion. But it does not need to be based on evidence that would be sufficient to support a conviction, or even a showing that defendant Wingo's belief was probably right. The fact that plaintiff Cook was not convicted of a crime does not by itself mean that there was no probable cause at the time of his arrest. The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.

It is not necessary that defendant Wingo had probable cause to arrest plaintiff Cook for obstruction of governmental operations, so long as defendant Wingo had probable cause to arrest him for some criminal offense

A person commits the offense of obstructing governmental operations if the person knowingly obstructs, impairs, or hinders the performance of any governmental function; a governmental function is any activity that a public servant is legally authorized to undertake on behalf of any governmental unit he or she serves.

A person commits the offense of failure to disperse if, during a riot or an unlawful assembly, he or she refuses or knowingly fails to disperse when ordered to disperse by a law enforcement officer or other person engaged in enforcing or executing the law. A person commits the offense of an unlawful assembly if he assembles with two or more other persons and has the purpose of engaging in conduct constituting a riot. A person commits the offense of a riot if, with two or more other persons, he knowingly engages in tumultuous or violent conduct that creates a substantial risk of causing public alarm, disrupting the performance of a governmental function, or damaging or injuring property or a person.

A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, he or she:

(1) Engages in fighting or in violent, threatening, or tumultuous behavior;

(2) Obstructs vehicular or pedestrian traffic;

(3) Congregates with two (2) or more other persons in a public place and refuses to comply with a lawful order to disperse of a law enforcement officer or other person engaged in enforcing or executing the law; or

(4) Creates a hazardous or physically offensive condition.

## COURT'S INSTRUCTION NO. 11

Your verdict must be for plaintiff Don Lloyd Cook and against defendant Jeff Sheeler on the claim of false arrest based on events from on or about May 23, 2021, to July 23, 2021, if all the following elements have been proved to be more likely true than not true:

*First*, defendant Sheeler arrested plaintiff Cook; and

*Second*, defendant Sheeler did not have probable cause to arrest plaintiff Cook.

If any of the above elements has not been proved, then your verdict must be for the defendant Sheeler.

Probable cause exists for an arrest if, at the moment the arrest was made, a reasonable person in defendant Sheeler's position would have believed that plaintiff Cook was committing a crime. In determining whether there was probable cause for the arrest, you should consider, what defendant Sheeler knew, and the reasonably trustworthy information defendant Sheeler had received.

An arrest is a "seizure" as defined by the Fourth Amendment. More particularly, arrest involves the restriction of movement.

Probable cause requires more than just a suspicion. But it does not need to be based on evidence that would be sufficient to support a conviction, or even a showing that defendant Sheeler's belief was probably right. The fact that plaintiff Cook was not convicted of a crime does not by itself mean that there was no probable cause at the time of his arrest. The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.

It is not necessary that defendant Sheeler had probable cause to arrest plaintiff Cook for obstruction of governmental operations, so long as defendant Sheeler had probable cause to arrest him for some criminal offense.

A person commits the offense of obstructing governmental operations if the person knowingly obstructs, impairs, or hinders the performance of any governmental function; a governmental function is any activity that a public servant is legally authorized to undertake on behalf of any governmental unit he or she serves.

A person commits the offense of failure to disperse if, during a riot or an unlawful assembly, he or she refuses or knowingly fails to disperse when ordered to disperse by a law enforcement officer or other person engaged in enforcing or executing the law. A person commits the offense of an unlawful assembly if he assembles with two or more other persons and has the purpose of engaging in conduct constituting a riot. A person commits the offense of a riot if, with two or more other persons, he knowingly engages in tumultuous or violent conduct that creates a substantial risk of causing public alarm, disrupting the performance of a governmental function, or damaging or injuring property or a person.

A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, he or she:

(1) Engages in fighting or in violent, threatening, or tumultuous behavior;

(2) Obstructs vehicular or pedestrian traffic;

(3) Congregates with two (2) or more other persons in a public place and refuses to comply with a lawful order to disperse of a law enforcement officer or other person engaged in enforcing or executing the law; or

(4) Creates a hazardous or physically offensive condition.

**COURT'S INSTRUCTION NO. 12**

Your verdict must be for plaintiff Don Lloyd Cook and against defendant Ryan Wingo on plaintiff Cook's claim that defendant Wingo used excessive force on or about June 1, 2020, if all the following elements have been proved to be more likely true than not true:

*First*, defendant Wingo struck plaintiff Cook with a shotgun-propelled beanbag round when in the process of stopping him or arresting him; and

*Second*, the force used was excessive because it was not reasonably necessary to stop or arrest plaintiff Cook; and

*Third*, as a direct result, plaintiff Cook was injured.

If any of the above elements has not been proved, then your verdict must be for defendant Wingo.

In determining whether the force was "excessive," you must consider: the need for the application of force; the relationship between the need and the amount of force that was used; the extent of the injury inflicted; and whether a reasonable officer on the scene, without the benefit of hindsight, would have used that much force under similar circumstances. Relevant factors include: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. You should keep in mind that the decision about how much force to use often must be made in circumstances that are tense, uncertain, and rapidly changing.

For this claim of excessive force, you must decide whether the officer's actions were reasonable in the light of the facts and circumstances confronting the officer without regard to the officer's own state of mind, intention, or motivation.

If a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force

against him. To fire a shotgun loaded with a lead-filled beanbag at a person's body or face is to use more than *de minimis* force against the person.

## COURT'S INSTRUCTION NO. 13

Plaintiff Don Lloyd Cook claims that the defendant Ryan Wingo and defendant Jeff Sheeler each violated his rights under the First Amendment to the United States Constitution. Every person has the constitutional right under the First Amendment to free speech, to peaceably assemble, and to petition the government for redress of grievances.

The question you must answer is whether any defendant violated plaintiff Cook's constitutional rights under the First Amendment, as I shall define for you in Instructions Nos. 14, 15, 16, and 17.

## COURT'S INSTRUCTION NO. 14

Your verdict must be for plaintiff Don Lloyd Cook and against defendant Ryan Wingo on plaintiff Cook's First Amendment retaliation claim based on events on or about June 1, 2020, if all the following elements have been proved:

First, defendant Wingo struck plaintiff Cook with a shotgun-propelled beanbag round when in the process of stopping him or arresting him on or about June 1, 2020;

Second, plaintiff Cook's attendance at the June 1, 2020, protest was protected by the First Amendment; and

Third, plaintiff Cook's protected activities were the but-for cause of defendant Wingo's decision to strike plaintiff Cook with a shotgun-propelled beanbag round when in the process of stopping him or arresting him on or about June 1, 2020.

However, your verdict must be for defendant Wingo if any of the above elements has not been proved.

Participating in protests to express frustration with police misconduct is protected First Amendment expression.

But-for cause means that the adverse action against plaintiff Cook would not have been taken by defendant Wingo absent the retaliatory motive.

## COURT'S INSTRUCTION NO. 15

Your verdict must be for plaintiff Don Lloyd Cook and against defendant Ryan Wingo on plaintiff Cooks's retaliation claim based on events on or about June 1, 2020, if all the following elements have been proved:

First, defendant Wingo struck plaintiff Cook with a shotgun-propelled beanbag round on or about June 1, 2020;

Second, plaintiff Cook's attendance at the June 1, 2020, protest was protected by the First Amendment; and

Third, defendant Wingo's decision to strike plaintiff Cook with a shotgun-propelled beanbag round on or about June 1, 2020, was motivated by plaintiff Cook's attending the June 1, 2020, protest; and

Fourth, defendant Wingo's striking plaintiff Cook with a shotgun-propelled beanbag round on or about June 1, 2020, might well dissuade a reasonable person in the same or similar circumstances from attending a protest.

However, your verdict must be for defendant Wingo if any of the above elements has not been proved.

Participating in protests to express frustration with police misconduct is protected First Amendment expression.

The fourth requirement is an objective one, not a subjective one. The test is designed to weed out trivial matters from those real and substantial violations of the First Amendment. In applying the test, the effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable.

**COURT'S INSTRUCTION NO. 16**

Your verdict must be for plaintiff Don Lloyd Cook and against defendant Jeffrey Sheeler on plaintiff Cook's First Amendment retaliation claim based on events on or about June 1, 2020, if all the following elements have been proved:

First, defendant Sheeler filed a false Arkansas State Police report against plaintiff Cook on or about June 1, 2020;

Second, plaintiff Cook's attendance at the June 1, 2020, protest was protected by the First Amendment; and

Third, plaintiff Cook's protected First Amendment activity was the but-for cause of defendant Sheeler's decision to file a false Arkansas State Police report against plaintiff Cook on or about June 1, 2020.

However, your verdict must be for defendant Sheeler if any of the above elements has not been proved.

Participating in protests to express frustration with police misconduct is protected First Amendment expression.

But-for cause means that the adverse action against plaintiff Cook would not have been taken by defendant Sheeler absent the retaliatory motive.

## COURT'S INSTRUCTION NO. 17

Your verdict must be for plaintiff Don Lloyd Cook and against defendant Jeffrey Sheeler on plaintiff Cooks's retaliation claim based on events from on or about May 23, 2021, to July 23, 2021, if all the following elements have been proved:

First, plaintiff Cook filed a Claims Commission claim for injuries he suffered due to events on June 1, 2020; and

Second, defendant Sheeler obtained an arrest warrant and directed the arrest of plaintiff Cook from on or about May 23, 2021, to July 23, 2021; and

Third, plaintiff Cook's arrest might well dissuade a reasonable person in the same or similar circumstances from filing a Claims Commission claim; and

Fourth, defendant Sheeler's decision to obtain an arrest warrant and direct the arrest of plaintiff Cook was motivated at least in part by plaintiff Cook's filing a Claims Commission claim; and

Fifth, plaintiff Cook was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.

However, your verdict must be for defendant Sheeler if any of the above elements has not been proved.

Government action designed to keep a citizen from initiating legal remedies can infringe upon the First Amendment right to petition the courts. Indirect impairment of this right includes retaliatory action taken against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future.

The First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech or protected activity.

The third requirement is an objective one, not a subjective one. The test is designed to weed out trivial matters from those real and substantial violations of the First Amendment. In applying the test, the effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable.

## COURT'S INSTRUCTION NO. 18

If you find in favor of the plaintiff Don Lloyd Cook under Instruction 10, 11, 12, 14, 15, 16, or 17, then you must award plaintiff Cook an amount of money that will fairly and justly compensate plaintiff Cook for any damages you find plaintiff Cook sustained as a direct result of the conduct of either or both the defendants as submitted in Instructions 10, 11, 12, 14, 15, 16, or 17. Plaintiff Cook's claim for damages includes three distinct types of damages and you must consider them separately:

1. *First,* you must determine the reasonable amount of lost wages, if any plaintiff Cook has experienced as a result of a finding of any defendant's liability in this case.

2. *Second*, you must determine reasonable value of the medical (hospital, nursing, and similar) care and supplies reasonably needed by and actually provided to plaintiff Cook and reasonably certain to be needed and provided in the future; and

3. *Third*, you must determine physical pain and emotional suffering plaintiff Cook has experienced and is reasonably certain to experience in the future; the nature and extent of the injury, whether the injury is temporary or permanent and any aggravation of a pre-existing condition.

Remember, throughout your deliberations you must not engage in speculation, guess, or conjecture, and you must not award any damages under this Instruction by way of punishment or through sympathy.

## COURT'S INSTRUCTION NO. 19

In addition to the damages mentioned in other instructions, the law permits the jury under certain circumstances to award punitive damages.

If you find in favor of plaintiff Don Lloyd Cook on any of his claims, and if it has been proved that the conduct of the defendant against whom plaintiff Cook's claim was brought was in violation of plaintiff Cook's constitutional rights, then you may, but are not required to, award plaintiff Cook an additional amount of money as punitive damages for the purposes of punishing the defendant against whom plaintiff Cook's claim was brought for engaging in misconduct and discouraging the defendant and others from engaging in similar misconduct in the future. You should presume that a plaintiff has been made whole for his injuries by the damages awarded under Instruction 18.

If you decide to award punitive damages, you should consider the following in deciding the amount of punitive damages to award:

1. How reprehensible the defendant's conduct was. In this regard, you may consider whether the harm suffered by the plaintiff was physical or economic or both; whether there was violence, deceit, intentional malice, reckless disregard for human health or safety; and whether the defendant's conduct that harmed the plaintiff also posed a risk of harm to others.

2. How much harm the defendant's wrongful conduct caused the plaintiff. You may not consider harm to others in deciding the amount of punitive damages to award.

3. What amount of punitive damages, in addition to the other damages already awarded, is needed, considering the defendant's financial condition, to punish the defendant for his wrongful conduct toward the plaintiff and to discourage the defendant and others from similar wrongful conduct in the future.

The amount of any punitive damages award should bear a reasonable relationship to the harm caused to the plaintiff.

You may award punitive damages against any or all defendants or you may refuse to award punitive damages. If punitive damages are awarded against more than one defendant, the amounts awarded against those defendants may be the same or they may be different.

**COURT'S INSTRUCTION NO. 20**

There are rules you must follow when you go to the jury room to deliberate and return with your verdict.

*First*, you will select a foreperson. That person will preside over your discussions and speak for you here in court.

*Second*, your verdict must be the unanimous decision of all jurors. Therefore, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement, if you can do this without going against what you believe to be true.

Each of you must come to your own decision, but only after you have considered all the evidence, discussed the evidence fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your mind if the discussion persuades you that you should. But do not come to a decision just because other jurors think it is right, or just to reach a unanimous verdict. Remember you are not for or against any party. You are judges—judges of the facts. Your only job is to study the evidence and decide what is true.

*Third,* during your deliberations, including during any recess taken during deliberations, you must not, directly or indirectly, communicate with or provide any information to anyone by any means or by any medium, about anything relating to this case, until I accept your verdict and discharge you from further service in this case.

*Fourth,* as stated in my instructions at the beginning of the trial, you may not in any manner seek out or receive any information about the case from any source other than the evidence received by the court and the law of the case I have provided to you. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system it is important that you are not influenced by

anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

*Fifth*, if you need to communicate with me during your deliberations, send me a note signed by one or more of you. Give the note to the court security officer, and I will answer you as soon as I can, either in writing or here in court. While you are deliberating, do not tell anyone—including me—how many jurors are voting for any side.

*Sixth*, nothing I have said or done was meant to suggest what I think your verdict should be. The verdict is entirely up to you.

*Finally*, the verdict form is your written decision in this case. The form reads: (read form). You will take this form to the jury room, and when you have all agreed on the verdicts, your foreperson will fill in the form, sign and date it, and tell the court security officer that you are ready to return to the courtroom.

## COURT'S INSTRUCTION NO. 21

To view the videos that have been entered into evidence, place the thumb drive in the USB-port on the laptop. Next, open the file explorer, and click on the folder entitled, "USB Drive (D)". The video exhibits should populate in that folder, and you can view each video exhibit by double-clicking the file name.